

FILED & JUDGMENT ENTERED
Steven T. Salata

May 22 2012

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

| | |
|---|---|
| In re: ) | |
| ) | |
| **JAZMIN I ALVAREZ,** ) | Chapter 7 |
| ) | Case No. 11-32087 |
| Debtor. ) | |
| ) | |

## ORDER DENYING BANKRUPTCY ADMINISTRATOR'S MOTION TO DISMISS

**THIS MATTER** was before this Court upon the Bankruptcy Administrator's Motion to Dismiss pursuant to 11 U.S.C. § 707(b)(3)(B), filed on November 10, 2011. A hearing was held on December 15, 2012. The matter was continued several times, with a final hearing on February 8, 2012. At hearing, the Bankruptcy Administrator was represented by Ann Dornblazer. The Debtor was present and represented by Jorge Gonzalez-Torres.

### BACKGROUND

Jazmin I. Alvarez ("Alvarez" or "Debtor") filed a voluntary Chapter 7 case in this court on August 15, 2011. Alvarez's case was randomly selected for audit pursuant to 28 U.S.C. § 586(f)(1) on August 25, 2011. On October 26, 2011, the Audit Report was filed

with the Clerk. That document identifies serious misstatements in Alvarez's sworn bankruptcy petition. Alvarez originally reported total current monthly income of only $2,246 in her Chapter 7 Statement of Current Monthly Income and Means-Test (Form B22A, Line 12); however, the Audit Report reveals a total monthly income three times this amount—$6,818, meaning Alvarez understated her monthly income by $4,572. Upon receiving notice of the discrepancy, Alvarez's attorney amended Form B22A to adopt the Audit Report's monthly income figure of $6,218. Amended Form B22A, Line 12, Sept. 6, 2011, ECF No. 6.

The Audit Report revealed a similar discrepancy in Alvarez's Schedule I statement of current income. Here, Alvarez originally disclosed a monthly average income for her family (Alvarez is married) of only $2,716 and a monthly net income of $589.92. However, the auditor determined that the Alvarez family had a monthly average income of $6,721 and a net monthly income of $4,272.71. This appearance was reinforced when Alvarez amended her Schedule I to adopt the Audit Report's monthly averaged income figure ($6,721). Amended Schedules I and J, Sept. 6, 2011, ECF No. 6. Monthly net income, originally reported at $589.92, became $ 4,272.71.[1]

Adding to the confusion, Alvarez filed a second amendment to Schedule J on September 22, 2011, which increased the family's average monthly expenses by $1,826 ($2,448.08 to $4,274.08) and correspondingly reduced its monthly net income to $2,446.71. Amended Schedule J, Sept. 22, 2011, ECF No. 7.

Even assuming this level of expenses, and with scheduled unsecured non-priority debts of $42,789.71, with a net income of $2,446.71 per month it appeared that Alvarez had an ability to pay her creditors in Chapter 13. As a result, the Bankruptcy

---

[1] Alvarez' Amended Schedule J increased her average monthly expenses by $322.

Administrator filed the current motion asserting that this Chapter 7 case is abusive under 11 U.S.C. § 707(b)(3)(B).

The Bankruptcy Administrator's Motion prompted Alvarez to again amend her petition. With a hearing on the motion set the next day, on December 14, 2011, Alvarez again Amended Schedules I and J (the second and third amendments, respectively), to reduce the family's average monthly income by $1,116 (from $6,720.79 to $5,604.79) and to increase the family's monthly expenses by $3,336 (from $2,448.08 to $5,784.08). Amended Schedules I & J, Dec. 14, 2011, ECF No. 15. As a result, this version shows a monthly deficit of -$179.29 and no ability to repay her creditors in Chapter 13.

At the December 15, 2012 hearing, the Bankruptcy Administrator pointed out that with these multiple versions of Schedules I and J and the Means-Test, the case is a moving target. According to the Debtor, Alvarez may have a monthly net income of $589.92 (original Schedules), $4,272.71 (first amendment), $2,446.71 (second amendment), or -$179.29 (third amendment).

Debtor's Counsel described the problem as being with Alvarez's non-filing spouse. He is the breadwinner in the Alvarez family,[2] an independent truck driver, and until recently entirely unwilling to share his financial information with his wife. Because of his intransigence, Alvarez filed what Counsel refers to as a "skeleton" petition—one providing estimated income and expense figures based on the limited information available. Alvarez's husband only began cooperating after the motion to dismiss was filed. His cooperation resulted in Alvarez's amendments filed the day before the December 15, 2011 hearing.

---

[2] In each iteration of Schedule I, Alvarez shows no income whatsoever.

3

As the undersigned noted at that hearing, a "best guess" petition cannot be reconciled with the verifications demanded in a petition under 28 U.S.C. § 1746—particularly when the petition does not disclose that the Debtor is estimating the numbers. However, at that hearing, Alvarez was afforded one last opportunity to make final changes to her schedules and statements. Further, she was ordered to provide the Bankruptcy Administrator documentation supporting her claimed monthly expenses by December 31, 2011. The matter was continued over until February 8, 2012.

Alvarez amended Schedules I and J, Form B22A, Summary of Schedules, and Form 6 on December 29, 2011. Amended Schedules I & J, Form B22A, Summary of Schedules, & Form 6, Dec. 29, 2011, ECF No. 16. On this latest occasion, and with full access to her husband's financial information, Alvarez reported (on Schedules I & J) average monthly income of $6,217.79, average monthly expenses of $6,015.81, and a monthly net income of only $201.98. Her reported monthly disposable income under § 707(b)(2) is -$2,078.52. Amended Form B22A, Line 50, Dec. 29, 2011, ECF No. 16.

After several continuances, a final hearing was held on February 8, 2012. Neither side offered sworn testimony. However, Debtor's Counsel offered this further explanation of the discrepancies in Alvarez's several filings. Alvarez filed a skeleton petition on August 15, 2011, because she was about to "crack under pressure." In her filing, she listed what she believed to be her husband's income from his job as a truck driver. However, because Alvarez and her spouse keep separate finances, the Debtor requested her husband's pay stubs from his employer to confirm that the amounts she listed in the petition were accurate. When she received the pay stubs in September 2011, and discovered a discrepancy, Alvarez amended her schedules to reflect more accurate

4

amounts of her husband's income. Alvarez continued to make amendments to the petition as financial information became available, especially once her husband began cooperating in December.[3]

In addition to these explanations, Debtor's Counsel noted that, since the last hearing, he and Alvarez had provided the Bankruptcy Administrator's Office with 222 pages of evidence to support expenses listed in the most recently amended Schedule J. While Alvarez technically had more expenses than those listed in the amended filings, the Debtor generally limited her entries to those for which she could provide documentation.

While the Bankruptcy Administrator did not take issue with Alvarez' explanation, she nevertheless believes the Debtor's conduct to be inexcusable and continues to recommend that the case be dismissed pursuant to 11 U.S.C. § 707(b)(3)(B). Her frustration with the Debtor is entirely understandable.

## **DISCUSSION**

A bankruptcy petition, with its attendant schedules and statements, is filed under penalty of perjury. 28 U.S.C. § 1746. The bankruptcy system is largely dependent on voluntary, self-disclosure of the debtor's finances. Filing a case based upon incomplete or inaccurate information undermines the system, making it impossible for others to evaluate whether the debtor is entitled to bankruptcy relief. Further, filing such a petition invites a motion to dismiss; loss of exemptions, see In re Robinson, 292 B.R. 599, 609 (Bankr. S.D. Ohio 2003) ("a debtor who fails to comply fully with the disclosure requirements imposed by the Code and Rules faces a penalty—forfeiture of the right to

---

[3] Debtor's Counsel was questioned about several other entries in the amended filings. It was apparent from the explanations provided that this is not a case of bankruptcy fraud.

claim an exemption in the concealed property"); a loss of the discharge, 11 U.S.C. § 727(a)(4)(A); or even criminal charges, 18 U.S.C. § 153 *et seq*.

Lacking the necessary information to file an accurate bankruptcy petition, Ms. Alvarez should not have filed one at all. Obviously, this "best guess" approach has occasioned a great deal of needless work by the Bankruptcy Administrator and this Court ferreting out the Debtor's true financial circumstances. Thus, "cause" exists to dismiss this case—essentially the Debtor's failure to file a true and accurate petition. Disgorgement of Counsel's fee in the case would be equally justified under the circumstances.

However, here at last we have complete and accurate information about the Alvarez's finances. The large discrepancies between Alvarez's original and amended filings have been explained. This does not appear to be a case of bankruptcy fraud. And it appears that Alvarez entirely lacks an ability to repay her creditors, in Chapter 13 or otherwise. Supporting that view, the Chapter 7 Trustee has filed a Report of No Distribution in the case, reflecting his belief that there are no assets with which to pay creditors.

While "cause" exists to dismiss this case, to do so would deny bankruptcy relief to someone who actually needs it. Consequently, the Court elects not to impose such a drastic sanction. Any point to be made to Debtor's Counsel by requiring disgorgement has likely already been made by the extra, uncompensated work required of him in amending the Petition and attending these hearings.[4] While the Court is entirely

---

[4] The Court assumes Counsel has not been paid by Alvarez for these endeavors, nor should he be. Any payments made by the Debtor for this purpose are to be refunded to the client, as they should not have been necessary had Counsel adhered to the demands of 28 U.S.C. § 1746.

6

sympathetic with the Bankruptcy Administrator's position, indeed her frustration with Alvarez and her Counsel, the Motion to Dismiss is **DENIED**.

**SO ORDERED.**

This Order has been signed electronically.
The judge's signature and the court's seal
appear at the top of the Order.

United States Bankruptcy Court